Serratto v Town of Mount Pleasant (2025 NY Slip Op 25091)

[*1]

Serratto v Town of Mount Pleasant

2025 NY Slip Op 25091

Decided on April 11, 2025

Supreme Court, Westchester County

Everett, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 11, 2025
Supreme Court, Westchester County

Sergio Serratto, ANTHONY AGUIRRE, IDA MICHAEL, 
 KATHLEEN SIGUENZA, SILVANA TAPIA, Plaintiffs,

against
Town of Mount Pleasant and TOWN BOARD OF THE TOWN OF MOUNT PLEASANT, Defendants.

Index No. 55442/2024

Attorneys for Plaintiffs
Abrams Fensterman 
81 Main Street, Suite 400
White Plains, New York 10601
(914) 607-7010
Attorney for Defendants:
Harris Beach Murtha Cullina PLLC 
445 Hamilton Avenue Suite 1206
White Plains, NY 10601 
(914) 683-1212

David F. Everett, J.

The following papers were read on the motion:
Plaintiffs' Notice of Motion/ Plaintiffs' Statement of Material Fact/ Plaintiffs' Affirmation in Support of Motion/ Plaintiffs' Memorandum of Law in Support/Plaintiffs' Exhibits A-ZZ/ Defendants' Memorandum of Law in Opposition/ Defendants' Response to Statement of Material Facts/ Defendants' Exhibits 1-3/ Plaintiffs' Reply Memorandum of Law/ Defendants' Notice of Motion/ Defendants' Memorandum of Law in Support/ Defendants' Affirmation in Support of Motion/ Exhibits A-R/ Defendants' Statement of Material Facts/ Affirmation in Opposition to Motion/ Amici Brief in Opposition to Defendants' Motion/ Memorandum of Law in Reply (documents 58-138, 146-157)
In this election law action predicated upon the John R. Lewis Voting Rights Act of New York (NYVRA), Plaintiffs SERGIO SERRATTO, ANTHONY AGUIRRE, IDA MICHAEL, KATHLEEN SIGUENZA, SILVANA TAPIA (plaintiffs) and defendants TOWN OF MOUNT PLEASANT and TOWN BOARD OF THE TOWN OF MOUNT PLEASANT (defendants or [*2]the Town), each move for summary judgment seeking judgment as a matter of law. Plaintiffs seek a declaratory judgment finding that the Town's at-large system to elect members of the Town Board dilutes the votes of Hispanic residents in violation of the NYVRA, and further argue that this violation should be remedied through the implementation of a plan for district-based voting or an alternative voting method.
Conversely, defendants seek dismissal of the complaint and argue that the NYVRA is unconstitutionally vague and violates the Equal Protection Clause as applied to this case, that many of the plaintiffs lack standing to commence this action, and that the evidence submitted demonstrates as a matter of law that the Town's at-large election process does not violate the vote dilution provisions of the NYVRA. For the reasons set forth below, both motions are denied.
 BACKGROUND
Enacted in 2022, the NYVRA seeks to encourage participation in the elective franchise by all eligible voters and ensure that members of racial, color, and language minority groups shall have an equal opportunity to participate in the political process and in the exercise the elective franchise. The statute generally provides that all statutes and rules related to the elective franchise shall be construed liberally to ensure equitable access and fully participation in the electoral process. The NYVRA also prohibits any political subdivision in New York from using a method of election which would have the effect the of impairing the ability of members of a protected class to elect candidates of their choice or influence the outcome of elections, as a result of vote dilution. (Election Law §17-206[2][a]).
Here, plaintiffs are Hispanic citizens registered to vote in the Town who claim that the Town's at-large voting system impermissibly dilutes the votes of eligible voters of Spanish heritage. Specifically, plaintiffs claim that the voting patterns of Hispanic Americans in the Town are racially polarized when compared to other Town voters, and that the at-large voting system impairs the ability of Hispanic Americans to choose a candidate of their choice or otherwise influence the election for Town Board. Defendants dispute any characterization that voting by Hispanic Americans is polarized from the remaining electorate, and that an analysis of the factors set forth in the NYVRA demonstrates that the at-large system does not impair the ability of the Town's Hispanic Americans to choose a candidate of their choice or otherwise influence the election for Town Board. Defendants also assert that several plaintiffs lack standing, and that the statute is unconstitutional. 

DISCUSSION

A) Legal Standard
"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Once this showing has been made, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action (Zuckerman v City of New York, 49 NY2d at 562). "[M]ere conjecture, suspicion, or speculation, is insufficient to defeat a motion for summary judgment" (Sanchez v City of New York, 190 AD3d 999, 1001 [2d Dept 2021], citing Martinez v City of New York, 153 AD3d 803, 806 [2d Dept 2017]). 
Furthermore, on a motion for summary judgment, the court must consider all the facts in a light most favorable to the non-moving party (Thomas v Drake, 145 AD2d 687 [3d Dept 1988]). As the court's function is issue finding and not issue determination, the court may not attempt to determine questions of credibility (SJ Capelin Assoc v Globe, 34 NY2d 338 [1974]). Finally, as a general rule, a party does not carry its burden in moving for summary judgment by pointing to gaps in its opponent's proof but must affirmatively demonstrate the merit of its claim or defense (Calderone v Town of Cortlandt, 15 AD3d 602 [2d Dept 2005]).
B) Claims that the NYVRA Violates the Equal Protection Clause or is Unconstitutionally Vague
As an initial matter, defendants dispute the constitutionality of the NYVRA, arguing the statute violates the Equal Protection Clause of the United States and New York Constitutions, and is so vague and inconsistent as to render it unenforceable. While the instant motions were pending, the Second Department held that the NYVRA is facially race neutral and not subject to strict scrutiny, finding that it "gives a cause of action to members of any racial or ethnic group that can establish that its members' votes are diluted through the combination of racially polarized voting and an at-large election system" (Clarke v Town of Newburgh, 226 NYS3d 310 [2d Dept 2025]). Given the Equal Protection challenge here largely mirrors the arguments set forth before the Second Department in Clarke, defendants' motion is denied with respect those arguments.[FN1]

In addition, the Court finds the NYVRA is not unconstitutionally vague and, indeed, the Second Department in Clarke analyzed and applied the very provisions defendants allege to be "incoherent" here without apparent difficulty.
For example, the Second Department found no conflict between the vote dilution requirement set forth in §17-206(2)(a) and the additional requirements set forth §17-206(2)(b)(i). In construing the statute as a whole, the Court found the statute plainly requires plaintiffs demonstrate vote dilution and, to do so, plaintiffs must establish a reasonable alternative practice "as a benchmark against which to measure the existing voting practice" (id. at 322). In other words, contrary to defendants' contentions, the requirements set forth §17-206(2)(a) and §17-206(b)(i) are not in conflict, and instead complement each other to create a two-prong test necessary to demonstrate a violation of the statute in situations where the subject political subdivision utilizes an at-large election system (id. at 330). 
The Court also rejects defendants' argument that the statute lacks manageable standards when considering an impairment claim under §17-206(2)(b)(i)(B), since it clearly sets forth eleven non-exclusive factors to guide any determination under that section (see Election Law §17-206[2][c]). Much of what defendants find objectionable results from comparing the NYVRA and the vote dilution provisions of the federal Voting Rights Act (VRA), which requires proof that, under a totality of the circumstances, the political process is not equally open to minority voters. However, the Second Department has implicitly rejected this argument in finding that the vote dilution requirement set forth in §17-206(2)(a) renders the NYVRA "not significantly" different from the VRA in terms of the standard necessary to find a violation of the statute (Clarke, 226 NYS3d at 330).
The Court finds defendants remaining arguments on this issue impart an excessively literal interpretation to the statutory language which amounts to little more than grammatical errors. When, as here, the legislature's intention is clearly expressed, the Court will give effect to the intention of the statute "despite grammatical inaccuracies and other inconsequential errors and inconsistencies" (Charles S. Wilson Mem'l Hosp. v. Axelrod, 76 AD2d 968 [3d Dept 1980]). 
C) Standing
Defendants seek to dismiss three of the four named plaintiffs due to a lack of standing. Generally, if the issue of standing is raised, a party challenging governmental action must meet the threshold burden of establishing that it has suffered an injury which "fall[s] within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the [government] has acted" (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). The statute here confers standing upon "any aggrieved person," which is to be construed liberally in favor of protecting the right of voters to have their ballot cast and counted and have equitable access to fully participate in the electoral process (see Election Law §17-206[4] & §17-202). 
As such, given that there is no dispute that plaintiffs are members of the language minority group allegedly aggrieved by the at-large voting system, any purported dilution of their votes clearly falls within the zone of interest sought to be protected by the statute, especially considering a liberal construction of the phrase "aggrieved person" is specifically required by the statute. 
Moreover, as applied here, evidence that plaintiffs lack a subjective opinion regarding a preferred candidate, or where a plaintiff is unable to recite their voting history, does not nullify plaintiffs' standing as an aggrieved person under the statute. Indeed, the purported injury to be avoided here is dilution of plaintiffs' voting power through an impermissible application of an at-large election process, not the type of concrete, pecuniary injury necessary to demonstrate standing in the property assessment cases cited by defendants. Given the statute's remedial purpose and liberal construction imparted upon the phrase "aggrieved person," the legislature surely did not intend to exclude members of protected minority group who did not vote due to the expected futility of that effort (see generally id. §17-200).
D) Vote Dilution under the NYVRA
When contesting an at-large election system, the NYVRA requires plaintiffs to satisfy a two-prong test to demonstrate a violation of the statute. 
First, plaintiffs must establish that either 1) the voting patterns of members of the protected class within the political subdivision are "racially polarized" or, 2) under the totality of the circumstances, the ability of members of the protected class to elect candidates of their [*3]choice or influence the outcome of elections is impaired (id. §17-206[2][b][i][A]-[B]). For the purposes of the NYVRA, racial polarization also includes vote polarization involving a language minority group, which undisputedly includes eligible Town voters of Hispanic heritage (id. §17-204[5]-[6]).
The statute further provides that evidence offered in support of this first prong shall be weighed and considered consistent with several well-defined principals, including, inter alia, finding statistical evidence more probative than non-statistical evidence and the exclusion of evidence tending to show racial polarization resulted from partisanship (id. §17-206[2][c]). When considering an impairment claim under the totality of the circumstances, the statute also provides an additional eleven non-exclusive factors which may be considered, including the "history of discrimination in or affecting" the subject political subdivision (id. §17-206[3]).
Next, plaintiffs must satisfy the second prong by showing that the voting system employed resulted in dilution and that "there is an alternative practice that would allow the minority group to 'have equitable access to fully participate in the electoral process'" (Clarke, 226 NYS3d at 330 citing Election Law §17-206[2][a] & §17-206[5][a]). 
Plaintiffs must satisfy both prongs to establish a violation of the statute. The NYVRA then allows the court to implement an appropriate remedy, including converting an at-large election system into a district-based system and/or the application of other alternative election methods (Election Law §17-206[5][a]).
E) Issues of Fact Preclude Summary Judgment
1) Defendants' Motion
To succeed on summary judgment, defendants must submit evidence affirmatively demonstrating as a matter of law the inapplicability of either the first or second prong of an at-large analysis under §17-206(2)(a) and §17-206(2)(b)(i)(A)-(B). Moreover, since the first prong contains a disjunctive, defendants must submit affirmative evidence establishing both the lack of racial polarization and impairment under the "totality of the circumstances" factors set forth in §17-206(3) to negate that prong as a matter of law. 
Alternatively, defendants could meet their prima facie burden by demonstrating as a matter of law that no alternative practice, including a district-based system, would allow eligible voters of Hispanic heritage to have equitable access to fully participate in the electoral process (cf. Clarke, 226 NYS3d at 330; Election Law §17-206[5][a]). To do so, of course, defendants would have to come forward with evidence that each alternative method would not result in further equitable access, including the ability to "influence the outcome of the election" (id. §17-206[2][b][i][B]).
Here, defendants fail to affirmatively submit sufficient evidence demonstrating that the Town is not racially polarized or that, under the totality of the circumstances, the at-large election system employed by the Town did not impair the ability of eligible voters of Hispanic heritage to influence the outcome of local Town elections. Furthermore, defendants do not affirmatively submit evidence establishing that an alternative election system or method of voting would not result in further equitable access for eligible Hispanic voters, including an enhanced ability to influence the outcome of a local elections. Having failed to eliminate issues of fact through the affirmative submission of evidence, defendants' motion must be denied.
2) Plaintiffs' Motion
In contrast to defendants, to succeed on their motion, plaintiffs must affirmatively submit evidence which satisfies both prongs as a matter of law, with affirmative evidence establishing either racial polarization or impairment under the "totality of the circumstances" factors set forth in 17-206(3) 
and that there is an alternative practice that would allow the eligible Hispanic voters to fully participate in the electoral process. Here, issues of fact predominate as to both prongs. 
First, plaintiffs fail to meet their prima facie burden demonstrating racial polarization as a matter of law, at least as that term is defined by the NYVRA. The statute defines "racially polarized voting" as the "divergence in the candidate, political preferences, or electoral choice of members in a protected class from the candidates, or electoral choice of the rest of the electorate (Election Law §17-204[6][emphasis added]) Here, while plaintiffs submit strong statistical evidence demonstrating a divergence in the electoral choices of eligible Hispanic voters from non-Hispanic White voters, plaintiffs do not demonstrate such divergence from the "rest of the electorate" as required by the statute, meaning non-Hispanic voters of all races and ethnicities (see NYSCEF Doc No. 70, pg. 4-7). 
Indeed, as set forth by defendants' expert, the non-White, non-Hispanic population could represent anywhere from 11 to 20 percent of the electorate (see NYSCEF Doc No. 71, pgs. 22-23), and a separate expert report submitted to the Town prior to litigation estimated this population as just under 10 percent (see NYSCEF Doc No. 65 at pg. 2). Defendants also submit expert evidence that the statistical techniques employed by plaintiffs' expert overstated Hispanic cohesion and understated the degree of crossover vote by non-Hispanic White residents, leading to skewed results (see NYSCEF Doc No. 71, pgs. 7-19). 
Second, defendants fail to eliminate all issues of material fact as to whether, under the "totality of the circumstances" factors set forth in §17-206(3), the at-large voting system impaired the ability of eligible Hispanic voters to elect candidates of their choice or influence the outcome of local elections. A "totality of the circumstances" inquiry in a voter dilution case "is fact intensive and requires weighing and balancing various facts and factors, which is generally inappropriate on summary judgment" (Alpha Phi Alpha Fraternity Inc. v Raffensperger, 700 FSupp 3d 1136, 1252 (11th Cir 2023).
The evidence submitted by plaintiffs, much of which clearly demonstrates historic discrimination against Hispanic Americans within political subdivisions located outside the Town, does not justify departing from this general rule (see NYSCEF Doc No. 67, pgs. 8-18). Moreover, to the extent that historic discrimination occurred within larger political subdivisions encompassing the Town, such as the State of New York or the County of Westchester, factual issues remain as to whether and to what extent that discrimination "affected" the Town (see Election Law §17-206[3][a]; NYSCEF Doc No. 67, pgs. 8-16). Further, although some factors under §17-206(3) are clearly present here, such as the socioeconomic disadvantage, other factors are arguably not satisfied, such as denying or excluding Hispanic voters from the processes of determining which groups of candidates receive access to the ballot (see Election Law §17-206[3][d] & §17-206[3][g]; NYSCEF Doc No. 67, pgs. 23, 26-30; NYSCEF Doc No. 70, pgs. 10-11).
Finally, plaintiffs fail to demonstrate as a matter of law that there is an alternative practice that would allow the eligible Hispanic voters to more fully participate in the electoral process. Notably, plaintiffs' expert opines that, under various scenarios, dividing the Town into four districts would always result in one district where Hispanic voters would comprise 31-33 [*4]percent of the electorate (see NYSCEF Doc No. 70, pg. 9-10). Plaintiffs' expert further opines that a district that is predicted to be served by a Hispanic-preferred candidate "always" has an estimated Hispanic vote share of greater than 30 percent (see NYSCEF Doc No. 70, pg. 9, last complete sentence).
However, defendants' expert opines in opposition to plaintiffs' motion that the data relied upon to generate the district-based scenarios includes voters residing outside of the Town who would not be eligible to vote in Town elections, and fails to correctly assess the demographic makeup at the precinct level, which subsequently skewed the underlying data supporting plaintiff's district-based election scenarios (see NYSCEF Doc No. 71, pgs. 3-6, 22). Factual issues therefore remain as to whether these purported data discrepancies affect the overall conclusion that Hispanic voters would still comprise 31 to 33 percent of a single district, especially given plaintiffs' expert's apparent opinion that a drop of 2 to 4 percentage points would place the Hispanic vote share under the 30 percent threshold necessary to elect the Hispanic-preferred candidate.
Finally, plaintiffs fail to eliminate issues of fact as to whether an alternative election method, such as cumulative, limited, or ranked choice voting, would allow Hispanic voters to more fully participate in the electoral process. Although plaintiffs' expert opines that each of those methods "could" allow for the election of a Hispanic-preferred candidate, he concedes that the analysis "includes the assumption that the component groups are entirely cohesive" (see NYSCEF Doc No. 73, pg. 14; NYSCEF Doc No. 75, pg. 2). Defendants' expert disputes plaintiffs' assumption as lacking an empirical basis, and that upon its removal, found that the likelihood that the alternative voting system will elect a Hispanic-preferred candidate may disappear entirely (see NYSCEF Doc No. 74, pg. 13). As such, issues of fact predominate as to whether an alternative election method would allow eligible Hispanic voters to more fully participate in the electoral process, including factual issues as to the reasonableness of the assumptions applied to plaintiffs' analysis when simulating alternative voting methods. 
Plaintiffs' motion is therefore denied.
Accordingly, it is,
ORDERED that the motions for summary judgment by plaintiffs and defendants are denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: April 11, 2025
White Plains, New York
ENTER:
HON. DAVID F. EVERETT, J.S.C

Footnotes

Footnote 1:Although not raised by the litigants in this action, the Court notes that the Second Department in Clarke did not specifically consider the constitutionality of the NYVRA's with respect to the definition of a language minority group, which limits protected language minority groups to persons who are "American Indian, Asian American, Alaskan Natives or of Spanish heritage." As such, on its face, the statute appears to implicitly favor some ethnic groups over others, such as Latino Americans of Spanish heritage over Latino Americans of Portuguese heritage. It is therefore unclear whether application of statutes definitional approach to language minority groups is as race neutral as the provisions found to be so by the Court in Clarke. In any event, the Court in Clarke seems to suggest that remedies under the NYVRA are available to all ethnic groups despite the statute's limiting language, and the issue seems to have little relevance as applied to this case since the aggrieved group here clearly qualifies as a language minority group under the statute.